### S02A0022. HAYES v. THE STATE.
(562 SE2d 498)

SEARS, Presiding Justice.

The appellant, Phillip Hayes, was convicted of the malice murder of Mia Austin and of family violence battery.[1] On appeal, Hayes

---

[1] The offense of family violence battery, OCGA § 16-5-23.1 (f), occurred on June 27,

contends, among other things, that the evidence is insufficient to support his convictions, and that the trial court erred in admitting into evidence a statement he made to the police. We conclude, however, that the evidence is sufficient to support the convictions, and that the trial court did not err in its rulings on the issues raised by Hayes on appeal. Accordingly, we affirm Hayes's convictions.

1. On August 3, 2000, Mia Austin did not come home from work. The next day, when her car was in the driveway of her apartment complex but she was not at home, her mother and sister reported her missing. On August 7, a body was pulled from Chestnut Lake in DeKalb County. The body was burned beyond recognition, and was wrapped in a comforter, bound with an electrical cord, and weighed down with a cinder block. The cause of death was strangulation. Through dental records, the medical examiner identified the body as Mia Austin's.

During the investigation, police learned that Ms. Austin had a child with Hayes. When the police interviewed Hayes, he told the police that he was with Juwan Carter at the time of Ms. Austin's disappearance. According to Hayes, he and Carter drank beer at Hayes's house, then went to a country club where they drank more beer. When the police interviewed Carter, he initially confirmed Hayes's story and denied any knowledge of the murder. Carter, however, later told police that he was covering for Hayes and that Hayes had admitted to Carter that he had killed Ms. Austin. Carter testified at trial that on August 3 at about 10:00 p.m., Hayes came to his house in a white Volvo and showed him the body of Ms. Austin in the trunk. According to Carter, Hayes told him that he had strangled Ms. Austin, that he had "handled his personal business," and that "that bitch ain't going to fuck up my life." Carter testified that he was afraid Hayes had a gun, so he agreed to help him dispose of the body. Hayes obtained a comforter and extension cord from Carter's garage, and Carter, who was driving his car, followed Hayes, who was driving the victim's car, to a local school. Carter testified that Hayes burned Ms. Austin's body at the school, wrapped the charred body and a cinder block in a comforter, and dragged the body into a nearby lake. Carter added that he and Hayes then drove both cars to the vic-

2000, and the murder occurred on August 3, 2000. Hayes was indicted on November 27, 2000, and following a jury trial, he was found guilty on January 26, 2001. The trial court sentenced Hayes to life in prison for the murder conviction and to 12 concurrent months in prison for the battery conviction. Hayes filed a motion for new trial on February 2, 2001, and the court reporter certified the trial transcript on June 11, 2001. The trial court denied Hayes's motion for new trial on August 8, 2001, and Hayes filed a notice of appeal on September 8, 2001. The appeal was docketed in this Court on September 21, 2001, and was submitted for decision on briefs on November 12, 2001.

tim's apartment, and left the victim's car there after Hayes cleaned it out.

Carter's wife testified that Carter and Hayes picked her up from work about 2:35 a.m. on the morning of August 4. She added that, after Hayes got out of the car, Carter began crying and told her that Hayes had murdered Ms. Austin. Ms. Carter identified the comforter in which the victim's body was wrapped as the one that was in her garage.

There was also evidence presented at trial that Hayes and Ms. Austin had had a number of prior difficulties, and that on June 27, 2000, Hayes had beaten Ms. Austin so severely that she had to go to a hospital.

Before Hayes's trial, Carter pled guilty to concealing the death of another. Hayes was convicted of the murder of Ms. Austin and of family violence battery for the June 27 incident.

Viewing the evidence in the light most favorable to the verdict, we conclude that the evidence is sufficient to support Hayes's convictions for malice murder and for family violence battery.[2]

2. Hayes contends that the trial court erred in admitting his statement to the police into evidence. More specifically, Hayes contends that the statement was inadmissible because Hayes was not advised of his *Miranda* rights before making the statement. The trial court, however, found that Hayes, who left the police station after giving the statement, was not in custody when he made the statement and that his statement was freely and voluntarily made. Because the trial court's finding that Hayes was not in custody when he made the statement is supported by the record, we conclude that Hayes was not entitled to *Miranda* warnings before he made the statement,[3] and that the trial court did not err in admitting it into evidence.

3. Hayes also contends that the trial court erred in admitting evidence of prior difficulties between the victim and Hayes, and that the trial court erred in permitting the State to introduce hearsay testimony to prove certain of those prior difficulties.

As "[e]vidence of prior threats, quarrels or assaults by a defendant against a victim are admissible to show motive and intent,"[4] we conclude that the trial court did not err in ruling that the evidence of prior difficulties between Mia Austin and Hayes was admissible.

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] See *Hightower v. State*, 272 Ga. 42, 43 (526 SE2d 836) (2000); *Moses v. State*, 264 Ga. 313, 314-315 (444 SE2d 767) (1994).

[4] *Slakman v. State*, 272 Ga. 662, 667 (533 SE2d 383) (2000). Accord *Peterson v. State*, 274 Ga. 165, 170-171 (549 SE2d 387) (2001); *Ward v. State*, 271 Ga. 648, 651 (520 SE2d 205) (1999); *Wall v. State*, 269 Ga. 506 (500 SE2d 904) (1998).

As for the hearsay issue, it appears that Hayes is contending that the June 27, 2000, battery of Austin, which was not prior difficulty evidence but a crime for which Hayes was on trial, was proven by inadmissible hearsay statements. We disagree. This crime was proven by eyewitness testimony and by statements of the victim that were admissible under the necessity exception to the hearsay rule, including statements made to a police officer during the course of investigating the crime.[5]

Finally, because the evidence of Hayes's guilt on the June 27 battery and August 3 murder was overwhelming, because those separate but connected crimes were properly joined together in this trial, and because each of the separate crimes was more damaging to Hayes with regard to the connected crime than any of the prior difficulty evidence, we conclude that even if the evidence offered to prove the prior difficulties was inadmissible hearsay, any error in admitting the hearsay was harmless.[6]

4. When a State's witness was describing a time when he had seen Hayes playing basketball before the crimes in question, the witness stated that it was "after everything had happened, whatever it was in his [Hayes's] past." Hayes objected and moved for a mistrial, contending that the use of the word "past" had improperly placed his character into evidence. The trial court denied the motion for mistrial, but instructed the jury to disregard any reference to Hayes's past on the ground that it was not relevant to the trial.

On appeal, Hayes contends that the trial court erred in denying his motion for mistrial. However, because the witness simply referred to Hayes's "past" and did not specify what that "past" consisted of, and because the trial court gave an appropriate curative instruction, we cannot conclude that the trial court abused its discretion in denying the motion for mistrial.[7]

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 15, 2002 —
RECONSIDERATION DENIED MAY 10, 2002.

*Elliott A. Shoenthal*, for appellant.
*J. Tom Morgan, District Attorney, Barbara B. Conroy, Candace K. Slezak, Assistant District Attorneys, Thurbert E. Baker, Attorney*

---

[5] *Peterson*, 274 Ga. at 169; *Chapman v. State*, 273 Ga. 865, 870 (548 SE2d 278) (2001); *Johnson v. State*, 273 Ga. 345, 347-348 (541 SE2d 357) (2001).

[6] See *Sturkey v. State*, 271 Ga. 572, 574 (522 SE2d 463) (1999); *Blackmon v. State*, 272 Ga. 858, 859 (536 SE2d 148) (2000).

[7] See *Johns v. State*, 274 Ga. 23, 25 (549 SE2d 68) (2001); *London v. State*, 274 Ga. 91, 92-93 (549 SE2d 394) (2001).

*General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.